# EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT ("Agreement") made as of this 31st day of March, 2000, by and between Will L. Arthur ("Employee") and Bacou USA Safety, Inc. ("Company"), a subsidiary of Bacou USA, Inc., both corporations organized and existing under the laws of Delaware with offices at 10 Thurber Boulevard, Smithfield, Rhode Island 02917.

## WITNESSETH:

WHEREAS, Company wishes to employ Employee as its Territory Sales Manager for laser products according to the terms and conditions of this Agreement; and

WHEREAS, Employee is willing to enter into this Agreement according to the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual promises herein contained, Company and Employee hereby agree as follows:

1. Employment. Company shall employ Employee, and Employee shall serve as its Territory Sales Manager for laser products, located at its Albuquerque, New Mexico sales office. Company retains the right to assign and modify the specific title, duties and responsibilities of Employee. Employee's reporting relationship will be according to the organization chart of Company, as in effect from time to time. Employee agrees to faithfully perform the duties assigned to him to the best of his ability, to comply with all applicable laws and the written policies and procedures of Bacou USA, Inc. as in effect from time to time and as then applicable to its subsidiaries and divisions ("Policies and Procedures") and, except for vacations and periods of temporary illness, to devote his full time and attention to the business of Company.

2. Period of Employment. Employee's employment with Company hereunder is effective as of July 1, 2000 ("Effective Date") and shall continue indefinitely until terminated by either party pursuant to the terms of this Agreement. Either party may terminate the employment of Employee under this Agreement upon three (3) months prior written notice to the other party; provided, however, that July 1, 2000 shall be the earliest date on which any such notice may be given. If either party notifies the other that he or it makes the foregoing election, Company may, at its option, decide that Employee shall take a leave-of-absence for part or all of the remaining three-month period, continuing to receive all compensation as if actively working.

3. Termination. Employee's employment under this Agreement shall be terminated upon the first to occur of the following:

(a) Effective date of the notice given pursuant to Section 2 of this Agreement.

(b) Death of Employee.

(c) Employee becoming "permanently disabled". A permanent disability that would render Employee permanently disabled shall mean any physical or mental incapacity of a nature which, in the reasonable judgment of Company, prevents Employee from performing his duties under this Agreement for a period of more than six months in any twelve-month period.

(d) Employee's employment being terminated by Company "for cause". Termination for cause shall mean termination of Employee by action of the Board of Directors of Company because of Employee's: (i) willful failure to perform his duties and obligations under this Agreement; (ii) failure to execute in a reasonable and responsible manner the Policies and Procedures; (iii) gross negligence in the performance of his duties under this Agreement; (iv) commission of a crime; (v) engaging in any activity that is competitive with the business of Company; (vi) engaging in fraudulent, unethical, dishonest or other similar activities that Company reasonably determines would adversely affect Company or the conduct of its business; or (vii) voluntary or involuntary personal bankruptcy.

4. Compensation and Benefits.

(a) Employee shall receive regular compensation ("Base Salary") at a rate *per annum* of Fifty-Six Thousand Two Hundred Twenty-Eight Dollars ($56,228) for the period beginning on January 1, 2000 and ending December 31, 2000. The Base Salary shall be payable in arrears less the usual payroll deductions at the same times and in the same manner as salaries paid to other employees of Company. The Base Salary shall be reviewed annually during the first quarter of each year of Employee's period of employment beginning in 2001.

(b) In addition to the Base Salary, Employee shall be entitled to receive commissions as follows: (i) for the period January 1, 2000 to December 31, 2000, at the rate of 4% of growth in sales and .06% for maintenance of sales

(c) Employee shall be entitled to participate in any stock option plan that Bacou USA, Inc. may adopt for officers of its subsidiaries and divisions at levels to be determined by the Board of Directors of Bacou USA, Inc. in its sole discretion.

(d) Employee shall be entitled to participate in all savings, thrift, retirement or pension, short-term and long-term disability, health, accident, hospitalization, holiday, vacation, and other fringe benefit programs generally available to executives of Company in accordance with and subject to the terms and conditions of such programs.

(e) Employee shall be entitled to the benefits accorded to those employees of Company in similar positions pursuant to the Policies and Procedures, including travel, expense reimbursement and leased vehicle policies in effect from time to time.

5. Limitations on Authority. The actions of Employee are subject to limitations on his authority as specified in his job description and in the Policies and Procedures (together, "Limitations on Authority"). The Limitations on Authority contain specific limitations on Employee's decision-making authority and establish a procedure for obtaining approval for actions that would otherwise exceed his authority. THE LIMITATIONS ON AUTHORITY ARE AN INTEGRAL PART OF THIS AGREEMENT AND SHOULD BE REFERENCED ANY TIME EMPLOYEE HAS A QUESTION ABOUT THE LIMITS ON HIS AUTHORITY TO MAKE DECISIONS RELATED TO THE BUSINESS OF COMPANY. FAILURE TO ADHERE TO THE LIMITATIONS ON AUTHORITY CONSTITUTES A BREACH OF THIS AGREEMENT AND MAY RESULT IN DISCIPLINARY ACTION BEING TAKEN AGAINST EMPLOYEE, UP TO AND INCLUDING TERMINATION OF EMPLOYMENT.

6. Non-Disclosure of Information. It is understood that the business of Company and its affiliates is of a confidential nature. During the period of Employee's employment with Company, Employee may have received and he may receive Confidential Information (as hereinafter defined) concerning Bacou USA, Inc., Company or any of their affiliates, subsidiaries or third party contractors which, if disclosed, would damage such entities. Employee agrees that during the period that this Agreement is in effect and thereafter he will not (except as authorized by Company or in the proper performance of his duties hereunder or except as ordered by a court or other body of competent jurisdiction or as otherwise required by law), directly or indirectly, divulge, disclose or appropriate to his own use, or to the use of any third party, any Confidential Information obtained by him during the term hereof. For purposes of this Agreement, "Confidential Information" shall include, but shall not be limited to any secret, proprietary or confidential information or knowledge pertaining to trade secrets, systems, manuals, confidential reports, methods, processes, designs, equipment lists, operating procedures, business records (e.g. financial, vendor, customer and employee records) and customer lists. Upon termination of his employment, Employee shall promptly deliver to Company all materials owned by Company and all Confidential Information that is, directly or indirectly, in the possession or under the control of Employee. The provisions of this paragraph shall continue to apply for an unlimited period of time (or, if shorter, the maximum period permissible under applicable law) after Employee ceases to be employed by Company.

7. Property. All letters, memoranda, documents, business notes (including all copies thereof) and any information contained on any other media including computer disks and hard drives of Employee in any manner relating to the duties of Employee under this Agreement are the property of Company and shall be delivered to Company immediately upon its request.

8. Trade Secrets. Employee covenants that he shall, while employed by Company, assign, transfer, and set over to Company or its designee all right, title and interest in and to all trade secrets, secret processes, inventions, improvements, patents, patent applications, trademarks, trademark applications, copyrights, copyright registrations, discoveries and/or other developments (hereinafter "Inventions") which he may, alone or in conjunction with others, during or outside normal working hours, conceive, make, acquire or suggest at any time that relate to the products, processes, work, research, or other activities of Bacou USA, Inc., Company or any of their subsidiaries or affiliates. Any and all Inventions which are of a proprietary nature and which Employee may conceive, acquire or suggest, either alone or in conjunction with others, during his employment with Company (whether during or outside normal working hours) shall be the sole and exclusive property of Company or its designee and Employee, whenever requested to do so by Company, shall, without further compensation or consideration, properly execute any and all applications, assignments or other documents which Company or its designee shall deem necessary in order to apply for and obtain Letters Patent of the United States and/or comparable rights afforded by foreign countries for the Inventions, or in order to assign and convey to Company or its designee the sole and exclusive right, title and interest in and to the Inventions. This obligation shall continue beyond the termination of this Agreement with respect to Inventions conceived or made by Employee during his employment by Company, and shall be binding upon his assigns, executors, administrators and other legal representatives.

9. Non-Competition. (a) During the period that this Agreement is in effect and, at Company's option, for a period of up to one year after its termination, Employee agrees that he will not within the geographical area of the United States, engage, either directly or indirectly, individually or as an owner, partner, joint venturer, employee, officer, director, stockholder, consultant, independent contractor or lender of or to any corporation, holding company or other business entity which is in a business similar to that of Bacou USA, Inc., Company or any of their subsidiaries or affiliates. During the term that this Agreement is in effect and for a period of one year thereafter, should Employee decide to become employed by any other business entity, as soon as Employee knows the identity of his new employer, he shall immediately provide notice to Company of the identity of such new employer. In the event that Company chooses to exercise its non-competition option with respect to Employee following termination of his employment with Company, Company shall notify Employee in writing within five (5) business days following the later of his last day of employment or the date on which Company receives notice of the identity of his new employer. Such notice shall specify the period of up to one year following termination of the Agreement, during which time Employee shall be prohibited from engaging in activity that is competitive with that of Bacou USA, Inc., Company or any of their subsidiaries or affiliates. In the event that Company exercises its non-competition option, Company shall continue to pay Employee his Base Salary at the rate applicable at the time of termination for the non-competition period, provided, however, that Company shall not be obligated to make any such payments (and shall be entitled to a refund of any payments actually made) to the extent that Employee violates his obligation of non-competition or invalidates such obligation through legal action.

(b) Employee shall not during the time that this Agreement is in effect, and for a period of three (3) years thereafter, employ, solicit for employment or arrange to have any other person or entity employ or solicit for employment any person who is or was employed by Company or any of its subsidiaries or affiliates for other employment or induce any employee or former employee to terminate his or her employment with Company or such subsidiary or affiliate.

(c) Employee will not hold other employment or engage in any other business activity without the prior written approval of the Chief Executive Officer of Company. Employee represents and warrants to Company that he is now under no contract or agreement, nor will he execute any contract or agreement, that will in any manner interfere, conflict with or prevent him from performing his duties under this Agreement, recognizing that his performance hereunder will require the devotion of his full time and attention during and beyond regular business hours, including extensive travel.

(d) If any provision of this Section 9 is held to be unenforceable because of the scope, duration or area of its applicability or otherwise, the parties agree that this provision will be amended automatically to the maximum scope, duration or area, or all of them, allowable under applicable law.

10. Notices. All notices or other communications required to be given pursuant to this Agreement shall be in writing and shall be deemed given: (i) upon delivery, if by hand; (ii) three (3) business days after mailing, if sent by registered or certified mail, postage prepaid, return receipt requested; (iii) one (1) business day after mailing, if sent via overnight courier; or (iv) upon transmission, if sent by telex or facsimile except that if such notice or other communication is received by telex or facsimile after 5:00 p.m. on a business day at the place of receipt, it shall be effective as of the following business day. All notices and other communications hereunder shall be given to the parties at the addresses set forth herein. Any party may change his or its address for receiving notices or may add persons to receive copies of notices by providing written notice to the other parties hereto in the manner provided in this section.

11. Full and Complete Agreement; Amendment. This Agreement, including any exhibits and schedules hereto, constitutes the full and complete understanding and agreement of the parties and supersedes all prior understandings and agreements, whether written or oral, express or implied, pertaining in any manner to the employment of Employee. This Agreement may be modified only by a written instrument executed by both parties.

12. Construction. This Agreement shall be governed by and construed in accordance with the laws of the State of Rhode Island without reference to its conflicts of laws provisions.

13. Arbitration. Notwithstanding the fact that the parties shall be entitled to equitable relief in order to enforce certain provisions hereunder (e.g., temporary restraining orders or injunctive relief), any dispute, controversy or claim arising out of or relating to this Agreement, or the breach hereof, shall be settled by arbitration in accordance with the

"Commercial Arbitration Rules" of the American Arbitration Association in effect on the date of this Agreement, except as varied below. The site of any such arbitration shall be Providence, Rhode Island and any award shall be deemed to be a Providence, Rhode Island award. There shall be a single arbitrator who shall be admitted to practice law in Rhode Island, with no less than ten (10) years experience in the handling of commercial or corporate matters or disputes. The arbitrator shall render a written decision stating his reasons therefor, and shall render an award within six (6) months of the request for arbitration, and such award shall be final and binding upon both parties. Judgment upon the award rendered by the arbitrator may be entered in any court of competent jurisdiction in any state of the United States or application may be made to such court for a judicial acceptance of the award and an enforcement, as the law of such jurisdiction may require or allow. The substantive law to be applied to any case determined pursuant to this Section 13 is that of the State of Rhode Island. Each party shall pay the fees and expenses of its own legal counsel in such proceedings. The expense of arbitration shall be borne equally by the respective parties except to the extent that the arbitrator shall determine that the entire expense shall be borne by a single party.

14. Binding Nature. This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective heirs, personal representatives, successors and assigns.

[Signature page follows]



PAGE 7/11 * RCVD AT 3/6/2006 11:12:41 AM [Eastern Standard Time] * SVR:R/RIGHTFAX/9 * DNIS:84545 * CSID:1 401 232 2230 * DURATION (mm-ss):04-12

IN WITNESS WHEREOF, Company and Employee have duly executed this Agreement as of the day and year first above written.

**COMPANY:**

BACOU USA SAFETY, INC.

By: ______________________________ ______________________________

Name: Alan H. Bennett Harry D. Neff

Title: President and CEO Sr. Vice President-Sales

**EMPLOYEE:**

______________________________

Name: Will L. Arthur

Address: 222 Skyland Boulevard
Tijeras, New Mexico 87059