# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GPT GLENDALE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>KENTEK CORPORATION, a New Hampshire corporation;<br><br>WILLIAM L. ARTHUR, an individual resident of New Mexico;<br><br>BONNIE G. SIMMONS, an individual resident of New Hampshire; and<br><br>RICHARD L. PELLEGRINI, an individual resident of Florida,<br><br>Defendants. | C.A. No. 06-334 L |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS KENTEK, SIMMONS AND PELLEGRINI FOR LACK OF PERSONAL JURISDICTION**

Pursuant to Rule 12(b)(2), defendants Kentek, Simmons and Pellegrini move to dismiss the Complaint against them on the grounds that this Court lacks personal jurisdiction over them. Simmons and Pellegrini are respectively residents of New Hampshire and Florida and Kentek is a small New Hampshire corporation based in New Hampshire (Complaint paragraphs 7, 9-10.), None of the Movants have any continuous presence in Rhode Island (MacMullin Affidavit, ¶2; Pellegrini Affidavit, ¶4; Simmons Affidavit, ¶2). Moreover, an examination of the allegations of the Complaint reveals no basis for specific jurisdiction since the alleged wrongful activities did not arise from any meaningful activity by Movants occurring in or related to Rhode Island.

The assertion of personal jurisdiction satisfies due process so long as there are "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). These requirements allow potential defendants to structure their primary conduct with some minimum assurance as to where that conduct might render them liable to suit. *World-wide Volkswagen Corp, v. Woodson*, 444 U.S. 286, 297 (1980).

Personal jurisdiction may be either general or specific. *Swarovski Optik North America Limited v. Euro Optics, Inc.*, 2003 U.S. Dist. Lexis 14881 (D.R.I.). "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *Id*. at 9 quoting *U.S. v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001). "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities." *Id*. To support specific personal jurisdiction the plaintiff must satisfy a three-part test:

1. The claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities.

2. The defendant's instate contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the state's courts feasible.

3. The exercise of jurisdiction must, in light of the Gestalt factors be reasonable.

*Id*.

Whether dealing with general or specific jurisdiction, the touchstone element is "purposeful availment" because the legal system needs to ensure that a defendant will not be

hailed into a jurisdiction solely as a result of " random, fortuitous or attenuated contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

In *Swarovski*, *supra*, Magistrate Judge Lovegreen provides much of the necessary guidance to decide this Motion. In *Swarovski*, the claim was trademark infringement and the issue was whether the operation of a commercially interactive website accessible in the forum state was sufficient to support specific personal jurisdiction. In that case, the court granted the defendant's motion to dismiss.

The court stated that the majority trend is to apply a slightly modified personal jurisdiction analysis examining a "sliding scale" of internet activity that is sufficient for jurisdiction and cited the leading case, *Zippo Mfg. Co. v. Zippo Dot Com Inc.*, 952 F. Supp. 1119 (W.D. Penn. 1997), regarding internet personal jurisdiction. *Swarovski*, at 11. *Zippo*, *supra*, established the sliding scale analysis, where "at one end of the spectrum are situations where a defendant clearly does business over the Internet." *Id*. at 12 (quoting 952. F. Supp. at 1124). At the other end of the scale are cases where the defendant has only established a passive website which does not allow for the transmission of information between parties. *Id*. The middle ground is occupied by "semi-interactive websites, through which there have not occurred a high volume of transactions between the defendant and residents of the foreign jurisdiction, yet which do enable users to exchange information with the host site." *Swarovski*, at 13 (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 399 (4th Cir. 2003).

In this middle ground, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the website." Id. (quoting Zippo, 952 F.Supp. at 1124). To determine whether Kentek has



874875_1/5451-2

subjected itself to specific personal jurisdiction in Rhode Island, the Court will apply the three-prong test cited above.

In *Swarovski*, the court found that the court lacked personal jurisdiction because the defendant did not purposefully avail itself of conducting business in Rhode Island because the only contact with Rhode Island was the website and, while it was interactive, no Rhode Island resident had purchased anything from it. The court went on to state, that even if a resident had ordered a product from the defendant's website prior to filing suit, one sale could be "the kind of 'fortuitous, random and attenuated' contacts that the Supreme Court has held insufficient to warrant the exercise of jurisdiction." *Swarovski* at 26 (citing *Toys "R" Us v. Step Two*, 318 F.3d 454, 455 suggesting that two sales originating from defendant's website to residents of the forum's state could simply be fortuitous, random and attenuated).

**<u>Product Related Claims</u>**

A significant portion of the Complaint's 168 paragraphs complain of defendant Kentek's activities on its interactive website. *See* Complaint, paragraphs 49-51, 59, 68-74 and Counts I, II and III. However, the MacMullin Affidavit indicates that Kentek's overall sales to Rhode Island are a tiny fraction of its overall sales and its website orders relating to Rhode Island are miniscule even if one includes an order from plaintiff obviously arranged for purposes of this lawsuit (MacMullin Affidavit, ¶¶3-4). As indicated in *Swarovski*, and that Court's citation of *Toys "R" Us v. Step Two*, this number of "web" sales does not support "purposeful availment" and therefore specific jurisdiction. *See also Subsalve USA Corporation v. Watson Manufacturing, Inc.*, 392 F. Supp. 2d. 221 (D.R.I. 2005). Even if one goes beyond "web" sales and examines the wrongful activities alleged in the Complaint and the products sufficiently

identified, the Rhode Island sales do not show “purposeful availment” (MacMullin Affidavit, ¶¶3-7).[1]

The Court should particularly note that the product alleged by plaintiff in Count XI to be the basis for patent infringement involves only two sales in Rhode Island over two and one-half years one of which was two days before the date of the Complaint another of which was a sale surreptitiously solicited by plaintiff for purposes of this lawsuit (MacMullin Affidavit, ¶5).

Finally, plaintiff alleges that Kentek has engaged in unfair tactics with respect to advice or lack of advice given to customers and the use of plaintiff’s product to lure customers into buying Kentek products. *See* Complaint paragraphs 52-60 and Counts IX (paragraphs 146-148) and X. The only information given about the location of these alleged activities is at a trade show in Boston (paragraphs 52-54). Except for Pratt & Whitney, which is not a Rhode Island customer (MacMullin Affidavit ¶5), no information is alleged as to the identity and location of the customers who were supposedly affected by these activities. Given the paucity of Kentek sales in Rhode Island, the claims do not meet the “relatedness” and “purposeful availment” requirements of personal jurisdiction. Even if it is foreseeable that the alleged tortuous breach occurring outside of Rhode Island, would cause injury to plaintiff in Rhode Island that is insufficient basis for exercising personal jurisdiction in Rhode Island. *Phillips Exeter Academy v. Howard Phillips Fund*; 196 F.3d 284, 291 (1st Cir. 1999).

**<u>Contract Claim</u>**

Although Kentek was a distributor for plaintiff up until April, 2006, plaintiff’s Complaint nowhere alleges breach of that agreement. Therefore, jurisdiction cannot be based on that activity. Instead, plaintiff asserts breach of a confidentiality agreement by Kentek.

---

[1] Minimal sales made in Rhode Island prior to the plaintiff’s April 2006 termination of Kentek as a distributor should not be included in the analysis since plaintiff does not allege breach of the distributorship agreement.

Complaint Count IV. That agreement, which is Exhibit A to the Complaint, describes the parties as being respectively New Hampshire and Massachusetts/Delaware entities and calls for construction pursuant to Massachusetts law. Kentek executed the agreement in New Hampshire (MacMullin Affidavit, ¶9). Disclosures under the agreement occurred in brief meetings in Massachusetts and Rhode Island (MacMullin Affidavit, ¶9), but, from the pleadings, it is impossible to determine where the alleged confidential disclosures occurred. As indicated in *Phillips Exeter Academy, supra*, at 290-291, "where most of the relevant interactions occurred" outside of the forum state, the "claim to jurisdiction … appears untenable." Moreover, there is no allegation as to where and how the confidential disclosures were used except for the claim that Kentek used them "to develop its own business to compete directly with GPT Glendale" (Complaint, paragraph 26) or for "business purposes . . . to gain a competitive advantage over GPT Glendale" (Complaint, paragraph 111). Since Kentek is located in New Hampshire and, as indicated above, does virtually no business in Rhode Island, the alleged use of the confidential information has an extremely "attenuated" contact with Rhode Island. Again, under the *Phillips Exeter* test, the allegation of impact on plaintiff in Rhode Island from a non-Rhode Island breach is insufficient to confer jurisdiction. Therefore, the claim passes neither the "relatedness" nor the "purposeful availment" test.

**"Hiring Away" Claims**

Counts VI, VIII and IX (paragraphs 141 – 145) are the remaining claims against these Movants and all relate to plaintiff's claims that Kentek hired Simmons, Pellegrini, Arthur and "non-parties" Brown and Carr to obtain confidential information about the plaintiff's business. Only one of these individuals (non-party Carr) resides in Rhode Island and Kentek denies ever having employed or even solicited the employment of Carr (MacMullin Affidavit,

¶14). The Complaint fails to identify where these hiring activities and alleged disclosures of confidential information occurred, but the MacMullin affidavit clearly indicates that, with one possible exception, the hiring and disclosure of information all occurred outside Rhode Island (MacMullin Affidavit, ¶¶11-16). Defendant Simmons was working for plaintiff in Rhode Island at the time she was contacted by Kentek but that contact and hiring cannot be a basis for a claim by plaintiff since plaintiff had no non-competition agreement with Simmons. To the extent that Simmons used or disclosed her industry knowledge for the benefit of Kentek, such disclosure occurred in New Hampshire (MacMullin Affidavit, ¶16).

**Claim by Claim Examination**

In deciding the issue of personal jurisdiction, this Court should analyze each claim "discreetly" and must "probe the causal nexus between the defendants' conduct and plaintiff's cause of action." *Phillips Exeter Academy, supra*. Here, the Court must determine whether each of the eleven alleged causes of action separately meets the requirement for personal jurisdiction and dismiss those that do not. The burden of persuading the Court that jurisdiction exists as to each claim falls on plaintiff. *Massachusetts School of Law v. ABA*, 142 F.3d 26, 34 (1st Cir. 1998). Movants submit that either the claims do not arise from their activities in Rhode Island, or, to the extent that they do, they do not arise from activities amounting to "purposeful availment".

Therefore, plaintiff's claims against these Movants should be dismissed.

KENTEK CORPORATION, BONNIE G. SIMMONS, AND RICHARD L. PELLEGRINI,
By Their Attorneys,

PARTRIDGE SNOW & HAHN LLP

/s/ James W. Ryan
James W. Ryan (#4042)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX
jwr@psh.com

DATED: September 12, 2006

Of Counsel:
W. Wright Danenbarger, Esq.
Thomas J. Pappas, Esq.
Wiggin & Nourie, P.A.
670 No. Commercial Street, Suite 305
P.O. Box 808
Manchester, NH 03105-0808
(603) 669-2211
(603) 623-8442 FAX
wdanenbarger@wiggin-nourie.com
tpappas@wiggin-nourie.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of September, 2006, I electronically filed MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS KENTEK, SIMMONS AND PELLEGRINI FOR LACK OF PERSONAL JURISDICTION with the Clerk of the United States District Court for the District of Rhode Island using the CM/ECF System. The following participant has received notice electronically:

Raymond M. Ripple, Esq.
Dennis J. Roberts, II

/s/ James W. Ryan