UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

GPT Glendale, Inc.
Plaintiff

v. C.A. No.06-334

Kentek Corporation, et al
Defendant(s)

**AFFIDAVIT OF THOMAS D. MACMULLIN
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
FOR LACK OF PERSONAL JURSIDICTION**

WIGGIN & NOURIE, P.A., MANCHESTER, NEW HAMPSHIRE

NOW COMES Thomas D. MacMullin, and being duly sworn, deposes and says:

1. I am the President and General Manager of defendant Kentek Corporation ("Kentek"). I make this Affidavit in support of the Motion to Dismiss for Lack of Personal Jurisdiction by Kentek, Bonnie G. Simmons ("Simmons"), and Richard L. Pellegrini ("Pellegrini").

2. Kentek is a New Hampshire corporation with its principal place of business in Pittsfield, New Hampshire and with 31 employees. It sells various kinds of laser accessories and laser protection equipment, including eyewear. It is not registered to do business in Rhode Island. It has no officers, property, agents, or employees in Rhode Island. It has no salesmen or sales representatives in Rhode Island and none assigned to cover that state. Kentek has no places of business outside New Hampshire other than an office recently opened in Albuquerque, New Mexico.

3. Kentek does not advertise in Rhode Island or do direct advertising to Rhode Island residents. While Kentek has maintained an interactive website through which one can

purchase its products, the website is international in scope and not directed at Rhode Island. In fact, in the period 2004 through July, 2006 there were only three "web" orders originating from Rhode Island and only one of these orders was for eyewear products. Moreover, this one website order for eyewear was placed on June 13, 2006 by Lisa Law, Product Manager for plaintiff, who was pretending to be associated with Brown University. Kentek's total order count for all products for the same period is over 14,000.

4. Even if one looks at Kentek's overall business and includes the many products not sold through the website and/or not described as eyewear, Kentek, over the same two and one-half year period, derived only 0.2% of its total sales from customers where the product was shipped to Rhode Island. And if one focuses on the allegedly involved eyewear products, Kentek's total Rhode Island sales are 0.05% of its total sales over two and one-half years.

5. The above analysis assumes that all Kentek eyewear products are involved in this case. Plaintiff's Complaint is mostly vague as to what specific eyewear products are allegedly infringing or allegedly involved in unfair conduct. Kentek sells a range of laser protection eyewear products (see Exhibit A hereto, which is Kentek's current range of eyewear products that appears on its website). One of the few exceptions to this vagueness appears in paragraphs 56-58 of the Complaint, where plaintiff alleges wrongdoing with respect to Pratt & Whitney's effort to purchase from Kentek a particular model number. Pratt & Whitney is based primarily in Connecticut and is certainly not a Rhode Island customer of Kentek. Kentek does not have any record that in the two and a half year period, it ever sold this model number product in Rhode Island. Another

exception appears in Count XI claiming patent infringement by Kentek's SEPS-Eyesafe product. In the 2004 to July 2006 period, Kentek has a record of one sale of SEPS-Eyesafe in Rhode Island, excluding, as noted in paragraph 3, the sale to plaintiff's employee which was obviously solicited for purposes of this lawsuit.[1]

6. The Complaint, paragraph 73, also mentions SEPS-SSBK and SEPS-SSHH (should be SSWH) eyewear as allegedly misrepresented on Kentek's website at some unspecified time. Pursuant to a sales order dated June 7, 2005, Kentek shipped one piece of SEPS-SSWH GPT Glendale eyewear to Rhode Island and billed the customer in Florida. Of course, this was while Kentek was a distributor for plaintiff and the customer did not order through Kentek's website. In paragraph 70 of the complaint, plaintiff refers to LGF and LOTG and Encore frames that appear on Kentek's website. But plaintiff doesn't allege any wrongdoing with respect to same. Again, the shipment to Rhode Island of these products was miniscule (3 orders over two and one-half years), was not the result of a website order and occurred (except in one case) when Kentek was still a GPT Glendale dealer and/or before plaintiff notified Kentek that it was no longer to sell GPT Glendale products even if they were in Kentek's inventory.

7. In Count III of the Complaint, plaintiff alleges trademark infringement based on Kentek's use of the LASER-AID or LASEAID mark.[2] Over the two and one-half years Kentek has shipped approximately fifteen orders of LASER-AID eyewear to Rhode Island, but in each case, the shipment was a GPT-Glendale product which would properly bear the

[1] This one sale was on July 19, 2006 – only two days before the date of the Complaint.
[2] Kentek never shipped a product bearing the mark LASEAID. Some of plaintiff's products were described on Kentek's website as LASEAID because of the need to abbreviate LASER-AID to fit order management software dimensions.

trademark and in all but one case, the shipment was made while Kentek was plaintiff's distributor. Moreover, none of these were website orders.

8. While Kentek and plaintiff recently had an oral agreement under which Kentek sold plaintiff's products, that arrangement was terminated by plaintiff and plaintiff, as part of its Complaint, does not allege a breach of that oral distribution agreement. Instead, plaintiff alleges breach of a Confidentiality Agreement dated November 22, 2003. See Complaint, Count IV, Complaint, ¶¶ 22 and 26, and Complaint, Exhibit A. The Agreement (Exhibit A to the Complaint) recites that plaintiff is a Delaware corporation with offices in Attleboro Falls, Massachusetts and Kentek is a New Hampshire corporation with offices in Pittsfield, New Hampshire. The Agreement further provides that it "shall be construed in accordance with the laws of the Commonwealth of Massachusetts" (Exhibit A, ¶11).

9. I was the Kentek person who executed the Confidentiality Agreement and had the contacts with plaintiff and its parent under the Agreement. I believe that I executed the Agreement in New Hampshire. I recollect two conferences with plaintiff and/or its parent companies, one in Attleboro Falls, Massachusetts for approximately two hours and the other in Smithfield, Rhode Island for approximately one to two hours. I cannot recall what information was imparted to me in which meeting, or whether any information of a purportedly confidential nature was disclosed in the Rhode Island meeting. I emphatically deny that any of this information was used improperly in breach of the agreement.

WIGGIN & NOURIE, P.A., MANCHESTER, NEW HAMPSHIRE

10. Another part of plaintiff's pleading complains of Kentek "hiring away" plaintiff's employees. The Complaint refers to defendants Arthur, Simmons, and Pellegrini and to "non-parties" Stephen R. Carr ("Carr") and Karen R. Brown ("Brown").

11. Arthur, who lives in New Mexico and ran plaintiff's New Mexico office, approached me in July, 2005 and indicated a desire to leave plaintiff due to the failure of plaintiff to look out for the safety of its customers. Arthur also suggested that he had serious conflicts and complaints with plaintiff's management. As indicated in the Complaint, Arthur had an Employment Agreement with plaintiff's parent companies which gave the employers the option to invoke a non-competition clause if Arthur was leaving to work for another business entity. Arthur advised me of the Employment Agreement and gave the notice to his employers required thereunder. When he was advised that the employers were invoking the non-competition clause, our plans to hire Arthur to open a New Mexico office for us were put on, and remain on, hold.

12. Arthur has disclosed no confidential information to Kentek and diverted none of plaintiff's business to us. Moreover, none of our contacts with Arthur concerning or arising from this matter occurred in Rhode Island.

13. Pellegrini is a former vice president of plaintiff who resigned from plaintiff in late 2004 and thereafter moved to Florida. In later telephone conversations between New Hampshire and Florida, we discussed retaining him as a consultant. We agreed to pay him a monthly stipend. He has disclosed nothing proprietary to us and none of our contacts with him concerning the consulting arrangement have occurred in Rhode Island.

WIGGIN & NOURIE, P.A., MANCHESTER, NEW HAMPSHIRE

14. I believe that "non party" Carr is a production manager for plaintiff. I met him once for about fifteen minutes in Rhode Island, when Kentek and plaintiff had an ongoing distribution arrangement. There is no employment or consulting arrangement in existence or planned with Carr.

15. Brown, also named as a "non party," is a former administrative assistant who worked in plaintiff's New Mexico office. She lives in New Mexico and I hired her to work in Kentek's New Mexico office. As far as I know, she had no employment or non-competition agreement with plaintiff and expressed to me considerable dissatisfaction in working for plaintiff. None of Kentek's contacts with her occurred in Rhode Island and she has made no disclosure of any proprietary information to Kentek.



16. Simmons is a former materials specialist for plaintiff who worked in plaintiff's Rhode Island facility. I learned that she was extremely dissatisfied with her employment wanted to move to New Hampshire to be closer to her family. I contacted her to come to work for Kentek. She agreed and moved to New Hampshire. Kentek was free to hire her since, as far as I know, she had no employment agreement or non-competition agreement with plaintiff. Nor is such an agreement alleged in the Complaint. She has never disclosed any of plaintiff's proprietary information to Kentek and, to the extent that she has provided any of her industry knowledge to Kentek, that disclosure has occurred in New Hampshire and not Rhode Island.

17. Plaintiff has made very generalized allegations that Kentek has somehow misadvised plaintiff's customers about the availability of plaintiff's product and offered these customers "knock-offs" of plaintiff's products while pretending to be plaintiff's

distributor. See Counts IX and X. Virtually none of these allegations identify these customers or their location, nor the location of where Kentek allegedly conducted these "wrongful" acts. The only exceptions are on page 15 of the Complaint, where there are separate references to Kentek's alleged conduct at a Boston, Massachusetts trade show and with respect to an inquiry by Pratt & Whitney. Nothing here is alleged to have occurred in Rhode Island or with respect to Rhode Island based customers.

FURTHER THE AFFIANT SAYETH NAUGHT

Respectfully submitted,

Date: September 7, 2006

[signature]
Thomas D. MacMullin

WIGGIN & NOURIE, P.A., MANCHESTER, NEW HAMPSHIRE

STATE OF NEW HAMPSHIRE
MERRIMACK, SS.

Subscribed and sworn to by Thomas D. MacMullin.

Before me,

[signature]
Notary Public/Justice of the Peace

My Commission Expires: MARTHA J. MOLOY
NOTARY PUBLIC
MY COMMISSION EXPIRES
JUNE 4, 2008