UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GPT Glendale, Inc.<br>Plaintiff<br><br>v.<br><br>Kentek Corporation, et al<br>Defendant(s) | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No.06-334 |

**AFFIDAVIT OF THOMAS D. MACMULLIN IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY**

NOW COMES Thomas D. MacMullin, being duly sworn, deposes, and says:

1. I am the President and General Manager of defendant Kentek Corporation ("Kentek"). I make this Affidavit in opposition to GPT Glendale's Motion for Preliminary Injunction and Expedited Discovery.

2. The essence of this Opposition is that injunctive relief is completely unnecessary and/or that GPT Glendale has failed to offer adequate proof of the likelihood of immediate irreparable harm. I make this Affidavit without waiver of defendants' claim that this Court has no personal jurisdiction over defendants Kentek, Richard L. Pellegrini, ("Pellegrini") and Bonnie G. Simmons ("Simmons").

3. Attached hereto as Exhibit A is a copy of GPT Glendale's Proposed Order which sets forth the preliminary injunctive relief which they seek under the Motion. I will deal with each of these requests by number.

4. With respect to GPT Glendale request number 1, I advise the Court that all photographs of GPT Glendale's products have been removed from Kentek's website and from all other Kentek marketing, promotion and advertising material that is still under Kentek's control. Kentek altered its website and its advertising even though it was not required to do so by any term or understanding under the previously terminated oral distribution agreement between the parties and even though Kentek should be allowed to advertise GPT Glendale products for sale when it has such products in its inventory.

5. With respect to GPT Glendale's request number 2 relating to product numbers, I advise the Court that all Kentek product numbers possibly similar to GPT Glendale product numbers have been changed on Kentek's website and in all other Kentek marketing, promotion, and advertising material that is still under Kentek's control. This change was made even though I believe that such numbers are not similar enough to confuse the trade and GPT Glendale has no proprietary rights in such numbers.

6. With respect to GPT Glendale's request number 3 relating to trademarks, I advise the Court that, if it ever did, Kentek is no longer using any marks on Kentek products that could be construed as confusingly similar to GPT Glendale's marks, either on Kentek's website or in any other Kentek marketing, promotion, or advertising material that is still under Kentek's control. Such changes include no longer using, as part of the Kentek product designation, "LTSPD" and "Uvex" even though LTSPD and Uvex have been used for many years in connection with

Kentek products without any complaint by GPT Glendale. Moreover, Kentek's use of Uvex arose only because the Uvex mark was placed on the product not by Kentek, but by its supplier.

7. With respect to GPT Glendale's request number 4 to require Kentek to provide notice of termination of the previous distributorship, Kentek has put on its website the notice shown in Exhibit B hereto. A similar notice is in the process of being advertised in two major trade journals (see, for example, Exhibit C) and transmitted to all current and former customers for which Kentek has an e-mail address. We've undertaken this activity even though it was not required by any term or understanding under the previously terminated oral distribution agreement between the parties. Moreover, there is insufficient evidence that any customer has been confused to the detriment of GPT Glendale.

8. In its request number 5, GPT Glendale proposes to enjoin defendants from "any additional activity that would result in the tortious interference with GPT Glendale's existing customers and prospective business relationship or otherwise unfairly compete with GPT Glendale." It is very unclear to me as to what is encompassed by the term "additional activity," and, therefore, Kentek would not know what is proscribed. In the Affidavit of GPT Glendale's McLear, there is a complaint that Kentek was telling customers looking for GPT Glendale product that there are problems with availability. McLear Affidavit, ¶¶14-17. I believe that there have been problems with the availability of GPT Glendale products, but since we are telling customers that Kentek is no longer a GPT Glendale distributor

and the trade has been so advised, there should be no further issue. GPT Glendale apparently thinks the same, since it does not seek specific relief directed to such conversations with customers.

9. Mr. McLear also mentions the conduct of defendant Arthur in referring an alleged GPT Glendale customer to Kentek and other conduct in favor of Kentek while Arthur was employed by GPT Glendale. McLear Affidavit, ¶¶20-21. I know nothing about this alleged conduct and Kentek certainly did not encourage such action by Mr. Arthur while he was employed by GPT Glendale. Mr. Arthur is not an employee of Kentek and Kentek has no control over his conduct. I understand that GPT Glendale and Arthur have reached a settlement which presumably protects GPT Glendale.

10. Finally, Mr. McLear's Affidavit complains of Kentek's advertising of its own product as having a "visible light transmission value of 80%" and being "FDA approved." McLear Affidavit, ¶30. Kentek stands by its claim of transmission value, since it has been confirmed by independent scientists. GPT Glendale's complaint of impossibility is particularly strange, since GPT Glendale claims its products have a transmission value of 90%. See Exhibit D hereto. Some of Kentek's products are FDA approved for surgical environments.

11. On the last page of its proposed orders, GPT Glendale also seeks relief against Kentek, Arthur, Simmons, and Pellegrini enjoining them from "additional activity that would result in the misappropriation of GPT Glendale's trade secrets." This proposal assumes not only that the defendants gained knowledge of certain

confidential information, but also that there is some evidence of a prior disclosure or misuse. Aside from the conclusory allegations of the Complaint, the only specific example given of alleged use of GPT Glendale's information for Kentek's benefit is contained in ¶44 of the Complaint. The essence of the claim is that Simmons disclosed to Kentek GPT Glendale's confidential vendor of a "metal eye cap." To understand the ridiculous nature of that claim, I refer the Court to the Supplemental Affidavit of Bonnie Simmons[1] where she clearly demonstrates that there could not be anything confidential about the vendor, and that it is highly unlikely that she disclosed any confidential vendor information to Kentek. This ridiculous claim should be weighed against the categorical denials of any misuse of confidential information contained in the Affidavits of Pellegrini, ¶6, MacMullin, ¶¶9, 12-13 and 15-16, and Simmons, ¶3 filed in support of Kentek's pending Motion to Dismiss.

12. GPT Glendale also seeks relief from "additional activity that would result in further breach of their contractual and/or common law duties to GPT Glendale." GPT Glendale never claims that there is any breach of a non-competition agreement resulting from Kentek hiring Simmons or any other employee or from using Pellegrini as a consultant. Therefore, the proposed relief must be based on the Lase-R-Shield Confidentiality Agreement between Kentek and GPT Glendale. Aside from failing to specify what confidential information was disclosed to Kentek under the Agreement, GPT Glendale totally fails to offer any proof that

[1] Filed in connection with defendants' pending Motion to Dismiss

Kentek misused that information. As previously, I, on behalf of Kentek, categorically deny any such misuse. Moreover, GPT Glendale's papers try to make it seem that the Agreement was entered into by Kentek as a ruse in order to obtain GPT Glendale's confidential information. GPT Glendale fails to inform the Court that Kentek also disclosed substantial confidential information to GPT Glendale under the agreement and that Kentek made a serious purchase proposal (see Exhibits E and F).

FURTHER THE AFFIANT SAYETH NAUGHT

Respectfully submitted,

Date: October 23, 2006

Thomas D. MacMullin

STATE OF NEW HAMPSHIRE
COUNTY OF MERRIMACK

Subscribed and sworn to by Thomas D. MacMullin.

Before me,

Notary Public/Justice of the Peace

My Commission Expires: MARTHA J. MOLOY NOTARY PUBLIC MY COMMISSION EXPIRES JUNE 4, 2008

00760335.DOC